**SEALED**

FILED

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

2012 MAY 30  PM 3: 41

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
              DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | CRIMINAL NO. A-12-CR- |
| **Plaintiff,** | § | |
| | § | **A12 CR 210 SS** |
| | § | |
| v. | § | **INDICTMENT** |
| | § | |
| **MIGUEL ANGEL TREVINO MORALES(1)** | § | |
| aka "40" | § | [Vio:  Ct I: 18 U.S.C. § 1956(h) - |
| **OSCAR OMAR TREVINO MORALES(2)** | § | Conspiracy to Launder Monetary |
| aka "42" | § | Instruments] |
| **JOSE TREVINO-MORALES(3)** | § | |
| **ZULEMA TREVINO(4)** | § | |
| **CARLOS MIGUEL NAYEN BORBOLLA(5)** | § | |
| aka "Carlito, aka, Pilotos" | § | |
| **FRANCISCO ANTONIO COLORADO** | § | |
| **CESSA(6)** | § | |
| **FERNANDO SOLIS GARCIA(7)** | § | |
| aka Freddy | § | |
| **VICTOR MANUEL LOPEZ(8)** | § | |
| **SERGIO ROGELIO GUERRERO RINCON(9)** | § | |
| aka "El Negro" | § | |
| **ADAN FARIAS(10)** | § | |
| **EUSEVIO MALDONADO HUITRON(11)** | § | |
| | § | |
| **FELIPE ALEJANDRO QUINTERO(13)** | § | |
| **RAUL RAMIREZ(14)** | § | |
| **LUIS GERARDO AGUIRRE(15)** | § | |
| **Defendants.** | | |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

At various times material to this indictment:

Defendants, **MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO**

MORALES(2), JOSE TREVINO MORALES(3), ZULEMA TREVINO(4), CARLOS MIGUEL NAYEN BORBOLLA(5), FRANCISCO ANTONIO COLORADO CESSA(6), FERNANDO SOLIS GARCIA(7), VICTOR MANUEL LOPEZ(8), SERGIO ROGELIO GUERRERO RINCON(9), ADAN FARIAS(10), EUSEVIO MALDONADO HUITRON(11), ███████████████████████████, FELIPE ALEJANDRO QUINTERO(13), RAUL RAMIREZ(14), LUIS GERARDO AGUIRRE(15) and others, were members of a money laundering conspiracy using proceeds derived from the sale of cocaine, marijuana and other illegal narcotics by an organization known as the LOS ZETAS.

The LOS ZETAS Drug Cartel is a powerful drug organization operating out of Mexico which funnels thousands of kilos of cocaine and other narcotics into the United States each year. LOS ZETAS are the largest drug cartel in Mexico in geographical presence and control 11 states within Mexico.  The organization is based in the city of Nuevo Laredo, Tamaulipas, directly across the border from Laredo, Texas.  The huge-scale drug trafficking of this organization generates multi-million dollar revenues.  LOS ZETAS funnels drug proceeds from Miguel Angel Trevino Morales, a.k.a. "40," (hereafter referred to either by first and last name or just "40") and his brother Oscar Omar Trevino Morales, a.k.a. "42," (hereafter referred to either by first and last name or just "42") into the United States. "40," and Heriberto Lazcano-Lazcano, a.k.a. "3," are the two co-leaders of LOS ZETAS.  The numbers associated with their names were first assigned at the inception of LOS ZETAS to show members' rank within the criminal organization (the "3," therefore, would demonstrate third in rank in the overall organization when LOS ZETAS was first organized).  In the last several years, however, killings and captures have eliminated those previously designated as higher ranking members, and "3" and "40" have now assumed top

2

leader status.

"40" and his brother "42" utilize another brother living within the United States, JOSE TREVINO MORALES, as well as other contacts to help launder their drug money through the purchase of American Quarter Horses.  The ownership of the horses and the source of the funds to purchase the horses are placed in various nominee names to disguise "40's" and "42's" connection to these assets.  Nominees are real or fictitious persons or entities that are used instead of the real and true owner.  This helps legitimize the appearance of their drug money since horse racing is a legal activity and also provides "40," "42," and those working with them free standing assets that can later be sold or "cashed in."  It also generates legitimate looking income during the intervening time period.  The money laundering network of this conspiracy reached from the United States/Mexico border to numerous locations in and near Austin, Texas, and elsewhere.

Telephones were utilized extensively by members of the conspiracy in order for co-conspirators to coordinate aspects of their money laundering.  Co-conspirators would attend quarter horse auctions to purchase racing quarter horses.  Via electronic and wire communications, members of the conspiracy would coordinate the purchase of various racing quarter horses and the payment of boarding, breeding and racing fees using the proceeds derived from the sale of illegal narcotics.

## OBJECTIVE OF THE CONSPIRACY

It was the object of the conspiracy to launder U.S. currency gained from the sale of illegal controlled substances by LOS ZETAS to purchase, breed, train and race quarter horses in the United States and Mexico.

## MANNER AND MEANS

For all periods of time relevant to the charges contained in this Indictment, the defendants and other co-conspirators, both known and unknown to the Grand Jury, used the following manner and means to accomplish the goals of the conspiracy:

A. The defendants were members or associates of a transnational drug trafficking organization or cartel based in Mexico known as the "LOS ZETAS."

B. Under the direction of **MIGUEL and OSCAR TREVINO MORALES**, Los Zetas controlled hundreds of miles of Mexican territory along the border of Mexico and the United States, which they used to conduct their drug trafficking and money laundering operations.

C. Los Zetas divided their territory into areas known as "plazas" along the Mexico-United States border and assigned each plaza region a leader known as a "plaza boss."

D. Los Zetas would direct the transportation of cocaine, marijuana and other controlled substances shipments via boats, planes, and automobiles from Colombia and Venezuela via Central America to various cities and "plazas" in Mexico.

E. "Plaza bosses" would then transport shipments of cocaine, marijuana as well as other illegal narcotics via motor vehicles from Mexico to cities in Texas for distribution in Texas and to other cities within the United States.

F. Proceeds from the sale of illegal narcotics in the United States would be transported from the United States to Mexico via bulk cash shipments. These cash shipments would be delivered to the "plaza bosses" for counting and distribution to promote the continuing distribution of illegal narcotics and to launder illegal proceeds through various activities.

Included amongst these activities were investments in racing quarter horses purchased via bulk currency payments, wire transfers, structured deposits and bulk currency deposits. The Quarter Horse is an American breed of race horse that is bred to sprint short distances ranging from 220 to 870 yards. Quarter horses are raced primarily in the Southwest United States and California.

G. **MIGUEL and OSCAR TREVINO MORALES** would direct portions of the bulk cash derived from the sale of illegal narcotics to their brother, **JOSE TREVINO MORALES** and his wife **ZULEMA TREVINO,** for the purchase, training, breeding and racing of quarter horses in the United States.

H. The defendants and other members of Los Zetas utilized Nextel "push-to-talk" telephones, Blackberry and UHF/VHF radio communications to coordinate their money laundering activities through the horse racing industry and to evade law enforcement surveillance.

I. The defendants, along with other members of Los Zetas, organized, directed, and carried out various acts of violence against Mexican law enforcement officers and rival drug traffickers to retaliate against and to intimidate any individual or individuals who interfered with or who were perceived to potentially interfere with the narcotics trafficking or money laundering activities of Los Zetas to include the laundering of proceeds via the American Quarter Horse racing industry.

J. The individual roles performed within Los Zetas organization by each of the defendants were as follows:

1. *MIGUEL ANGEL TREVINO MORALES*, *a.k.a. "40," a.k.a. "Zeta 40,"a.k.a. "Cuarenta."* **MIGUEL TREVINO** is a ranking member of Los Zetas and is recognized as one

of the two co-leaders of Los Zetas. **MIGUEL TREVINO** was actively involved in managing the activities of Los Zetas Drug Cartel in Mexico, including the coordination of cocaine and marijuana shipments from South America via Central America into the United States, as well as the receipt of bulk currency shipments into Mexico from the United States.  He was actively involved in the management of the quarter horse activities, including directing funds to pay for the purchase, breeding, training and racing of the quarter horses.

2. *OSCAR OMAR TREVINO MORALES, a.k.a. "42," a.k.a. "Cuarenta dos,"* **OSCAR TREVINO** has a leadership role and oversees Los Zetas activities in Mexico. **OSCAR TREVINO** was actively involved in managing the activities of Los Zetas Drug Cartel in Mexico, including the coordination of cocaine and marijuana shipments into the United States, as well as the receipt of bulk currency shipments into Mexico from the United States.  He was actively involved in the management of the quarter horse activities, including directing funds to pay for the purchase, breeding, training and racing of the quarter horses.

3. *JOSE TREVINO MORALES.* **JOSE TREVINO MORALES**  is the brother of **MIGUEL and OSCAR TREVINO MORALES** and was actively involved in managing the activities of money laundering operation in the United States posing as a "legitimate" quarter horse owner.  His activities included the coordination of purchasing, training and racing quarter horses using bulk currency, wire transfers, bulk currency deposits, and structured payments from Mexico into the United States.  **JOSE TREVINO** and his wife Defendant, **ZULEMA TREVINO** created TREMOR ENTERPRISES, LLC, 66 LAND, LLC, and ZULE FARMS, LLC, which are business entities for the purpose of promoting the money laundering activities.

4. *ZULEMA TREVINO.* **ZULEMA TREVINO** is the spouse of **JOSE TREVINO.**

6

**ZULEMA TREVINO** is listed as an officer of TREMOR ENTERPRISES, LLC., 66 LAND, LLC., and ZULE FARMS, LLC., which are front companies for Los Zetas' money laundering activities used to conceal and disguise the ownership of quarter horses. **ZULEMA TREVINO** was responsible for the financial accounts of the various entities controlled by her and Defendant **JOSE TREVINO MORALES** and management of the organization's operations in Lexington, Oklahoma.

5. ***CARLOS MIGUEL NAYEN BORBOLLA, a.k.a. "Carlito;" a.k.a., "Pilotos."*** **NAYEN** was actively involved in managing the activities of money laundering operations in the United States, including the coordination of purchasing, training and racing quarter horses using bulk currency, wire transfers, bulk currency deposits, and structured payments from Mexico into the United States. **NAYEN** was responsible for arranging the various payments to various trainers and boarding facilities for the organization's horses. **NAYEN** is listed as an officer of CARMINA, LLC., a business entity, which is a front company for Los Zetas' money laundering activities used to conceal and disguise the ownership of quarter horses.

6. ***FRANCISCO ANTONIO COLORADO CESSA.*** **CESSA** was a Mexican business man operating as a straw purchaser for **MIGUEL and OSCAR TREVINO MORALES.** **CESSA** would act as a straw purchaser for various horses. He would make payments via personal check and wire transfers for the purchase and also the boarding and training of quarter-horses. **CESSA** controls ADT PETROSERVICIOS, a business entity, which is a front company for Los Zetas' money laundering activities used to conceal and disguise the ownership of quarter horses.

7. ***FERNANDO SOLIS GARCIA, a.k.a. "Freddy."*** **GARCIA** was actively involved in

7

the activities of money laundering operations in the United States. **GARCIA** would work with Defendants **JOSE TREVINO** and **NAYEN** in purchasing, training and racing quarter-horses using various straw purchasers and placing quarter horses in various entities for the organization to disguise their true ownership. **GARCIA** is listed as an officer of GARCIA BLOODSTOCK, LLC., and has control of BONANZA RACING, LLC., which are front companies for Los Zetas' money laundering activities used to conceal and disguise the ownership of quarter horses.

8. *VICTOR MANUEL LOPEZ.* **LOPEZ** was actively involved in the activities of money laundering operations in the United States. **LOPEZ** worked under the direction of Defendant **NAYEN** and was responsible for making payments for the care and upkeep of quarter-horses via cash payments, wire transfers and personal checks using bulk currency, bulk currency deposits, and structured payments from Mexico into the United States.

9. *SERGIO ROGELIO GUERRERO RINCON, a.k.a. "El Negro."* **RINCON** was actively involved in the activities of money laundering operations in the United States. **RINCON** would work with Defendant **JOSE TREVINO** in making payments for the care and upkeep of quarter horses via cash payments using bulk currency, bulk currency deposits, and structured payments from Mexico into the United States.

10. *EUSEVIO MALDONADO HUITRON.* **HUITRON** worked as a race trainer for the quarter horses under the control of this organization and advised Defendant **JOSE TREVINO** and other members and associates of Los Zetas on quarter horse purchases, training and racing. **HUITRON** utilized HUITRON HOMES, a business entity, to launder funds for the organization.

8

████████████████████████████████████

███████████████████

12. *FELIPE ALEJANDRO QUINTERO.*  **QUINTERO** worked as a race trainer for the quarter horses under the control of this organization in California.  **QUINTERO** met with Defendants **JOSE TREVINO** and **NAYEN** to discuss the training of quarter horses and the method of payment to conceal the activities of Los Zetas.  He advised members and associates of Los Zetas on quarter horse purchases, training and racing.

13. *ADAN FARIAS.* **FARIAS** worked as a race trainer for the quarter horses under the control of this organization and advised members and associates of Los Zetas on quarter horse purchases, training and racing.  **FARIAS** met with Defendant **MIGUEL TREVINO** and others to discuss the laundering of drug proceeds via the quarter horse racing industry.

14. *RAUL RAMIREZ.*  **RAMIREZ** was actively involved in the activities of the money laundering operation in the United States.  **RAMIREZ** would bid for horses on behalf of the organization at auction to aid in disguising the true ownership of the horses.

15. *LUIS GERARDO AGUIRRE.*  **AGUIRRE** operated as a straw-purchaser for Los Zetas organization in which he would purchase quarter horses in his name which would be transferred at a later date to Defendant **JOSE TREVINO MORALES** for little or no money.

## COUNT I
### 18 U.S.C. §1956(h)
**Conspiracy to Launder Monetary Instruments**

Beginning in or about 2008, and continuing until on or about the date of this Indictment, in the Western District of Texas and elsewhere, the Defendants,

9

**MIGUEL ANGEL TREVINO MORALES(1)**
**aka "40"**
**OSCAR OMAR TREVINO MORALES(2)**
**aka "42"**
**JOSE TREVINO MORALES(3)**
**ZULEMA TREVINO(4)**
**CARLOS MIGUEL NAYEN BORBOLLA(5)**
**aka "Carlito, aka, Pilotos"**
**FRANCISCO ANTONIO COLORADO CESSA(6)**
**FERNANDO SOLIS GARCIA(7)**
**aka Freddy**
**VICTOR MANUEL LOPEZ(8)**
**SERGIO ROGELIO GUERRERO RINCON(9)**
**aka "El Negro"**
**ADAN FARIAS(10)**
**EUSEVIO MALDONADO HUITRON(11)**

██████████████████████████████████

**FELIPE ALEJANDRO QUINTERO(13)**
**RAUL RAMIREZ(14)**
**LUIS GERARDO AGUIRRE(15)**

together and with others known and unknown to the Grand Jury, did unlawfully, willfully, and knowingly combine, conspire, confederate and agree among themselves and each other to commit certain offenses against the United States as follows:

(a) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (1) did conduct and attempt to conduct such a financial transaction which involved the proceeds of specified unlawful activity, that is, conspiracy to distribute controlled substances and extortion and bribery in sporting contests, (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, and to avoid a transaction reporting requirement under federal law, in violation of 18 U.S.C. § 1956(a)(1)(B); and,

10

(b) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to or through a place outside the United States and to a place in the United States from or through a place outside the United States knowing that such transportation was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, that is, conspiracy to distribute narcotics controlled substances and extortion and bribery in sporting contests, and to avoid a transaction reporting requirement under federal law, in violation of 18 U.S.C. § 1956(a)(2)(B);

All in violation of Title 18, United States Code, Section 1956(h).

### OVERT ACTS

In furtherance of the conspiracy and in order to effect the object thereof, the Defendants and their co-conspirators, known and unknown to the Grand Jury, committed and caused to be committed one or more of the following overt acts, among others, in the Western District of Texas and elsewhere:

OA1.   On or about December 14, 2008, Ramiro Villareal purchased a quarter horse named TEMPTING DASH for $21,500. On October 24, 2009 TEMPTING DASH won the Dash for Cash at Lone Star Park race track in Grand Prairie, Texas, listing Ramiro Villareal as the owner.  On November 14, 2009, the American Quarter Horse Association received paperwork transferring the registration on TEMPTING DASH from Villareal to Defendant JOSE TREVINO.  TREVINO put the date of September 29, 2009 as the date of transfer, thus back-

dating the transfer.

OA2.   On or about September 4, 2009, Defendant FRANCISCO COLORADO CESSA with the assistance of others purchased thirteen (13) horses at Heritage Place Yearling Auction for a total of $546,500.  Payment for these horses was made in part with a $516,500 check drawn on the American Express Bank International account of FRANCISCO A. COLORADO C.  This purchase included quarter horses MORNING CARTEL and FEATURE HONOR which were subsequently transferred to Defendant JOSE TREVINO and his entities TREMOR ENTERPRISES, LLC., and 66 LAND, LLC.

OA3.   Defendant JOSE TREVINO transferred $435,000 gained from the winnings of quarter horse TEMPTING DASH, from his Bank of America account 4881 1761 5000 to his TREMOR ENTERPRISES, LLC., account 4880 2680 1054 on December 21, 2009.  On December 22, 2009 JOSE TREVINO wrote two (2) checks to himself in the amount of $100,000 and $57,793 from TREMOR ENTERPRISES, LLC., account and deposited the checks into his personal account. One week later JOSE TREVINO wrote two (2) checks from his personal account and put $157,793 back into the TREMOR ENTERPRISES, LLC., account thus creating the appearance of personal income.

OA4.   On or about January 14, 2010 at the Heritage Place Winter Mixed auction, Defendant JOSE TREVINO directed the purchase of a quarter-horse named DASHIN FOLLIES for approximately $875,000 and a quarter horse named CORONA CORONITA CARTEL for approximately $250,000 in a nominee name.  Defendant LUIS GERARDO AGUIRRE made a $100,000 cash payment as part of the purchase price.  GRUPO ADUANERO INTEGRAL AGENCIA ADU, a Mexican business entity controlled by Alejandro Barradas, made a number of

wire transfers in excess of $900,000. In December 2010, ownership of these two horses was transferred into the name of Defendant LUIS GERARDO AGUIRRE. Payment for the care, boarding and feeding of these two horses was arranged for by Defendants CARLOS NAYEN and VICTOR LOPEZ. In January 29, 2012, these two horses were transferred to 66 LAND, LLC, an entity under the control of Defendants JOSE TREVINO and ZULEMA TREVINO and moved to Lexington, Oklahoma.

OA5.   Defendant FELIPE QUINTERO trained quarter horses on behalf of the organization. On February 12, 2010, Defendant FELIPE QUINTERO opened up BANK OF AMERICA ACCOUNTs #08900-76710 and # 08906-75022 in the name of FELIPE A QUINTERO. On September 22, 2010, FELIPE QUINTERO received a $90,000 wire transfer from ADT PETROSERVICIOS, a business entity controlled by Defendant FRANCISCO COLORADO CESSA and used by the LOS ZETAS. Defendant VICTOR LOPEZ, made currency deposits of $5,000 on October 5, 2010, $4,000 on October 6, 2010 and $3,000 on October 7, 2010 that were structured into QUINTERO's account. Another $9,900 in currency was deposited into the account on October 18, 2010.

OA6.   In or about June 2010, Defendant ZULEMA TREVINO, acting on behalf of TREMOR ENTERPRISES, LLC., in which she is listed as a 25% owner, made payments for the boarding, upkeep and breeding of the organization's quarter horses.

OA7.   On or about June 25, 2010, Defendant ADAN FARIAS opened a Bank of America business checking account # 07349-69234 for LA HORSES, INC,  The following were among the structured deposits made to this account in 2010 from Laredo, Texas:

10/21   $8,000

| | |
|---|---|
| 10/21 | $8,000 |
| 10/22 | $5,500 |
| 10/22 | $8,000 |
| 10/29 | $9,900 |
| 11/01 | $6,300 |
| 11/01 | $8,000 |
| 11/02 | $1,650 |
| 11/17 | $6,000 |
| 11/17 | $9,000 |
| 11/18 | $9,000 |
| 12/20 | $5,900 |
| 12/20 | $9,900 |

OA8.  On or about September 3 – 5, 2010, Defendants JOSE TREVINO, CARLOS NAYEN, SERGIO RINCON, RAUL RAMIREZ and others attended the Ruidoso Horse Sales Company Yearling Sales in Ruidoso, New Mexico. RAUL RAMIREZ bid on quarter horses on behalf of NAYEN and TREVINO.  Members of the organization purchased 23 horses for $2,240,700.  After the auction, Defendant FRANCISCO COLORADO CESSA was listed on the auction paperwork as the owner and provided a check in the amount of $2,240,700 to pay for the horses.

OA9.  On or about October 2-3, 2010, at the Los Alamitos Equine Sales in Los Alamitos, California, Defendant FELIPE QUINTERO and others purchased five (5) horses in the name of GRUPO ADUANERO INTEGRAL AGENCIA ADU, a Mexican business entity for approximately $442,000.  Wire transfers from GRUPO ADUANERO INTEGRAL AGENCIA ADU were used to pay for the horses.  FELIPE QUINTERO acted as the purchasing agent for GRUPO ADUANERO INTERGRAL AGENCIA ADU.

14

[REDACTED]

OA11. On or about January 13-15, 2011, at the Heritage Place Mixed Winter Sale in Oklahoma City, Oklahoma, members of the organization to include Defendants, JOSE TREVINO, CARLOS NAYEN, [REDACTED] and LUIS GERARDO AGUIRRE purchased twelve (12) quarter horses for approximately $546,200 in various nominee names. Defendant AGUIRRE also purchased an embryo for approximately $30,000. All the purchases were paid for by GRUPO ADUANERO INTERGRAL AGENCIA ADU, a Mexican business entity controlled by Alejandro Barradas.

OA12. On or about May 20 - July 6, 2011, Defendant EUSEVIO HUITRON d.b.a. Huitron Homes, received four (4) cash deposits totaling approximately, $36,500 into his Wells Fargo account # 4231 79 6769, none of which was greater than $10,000, which payments were made for the boarding and training of the organization's quarter horses.

OA13. On or about July 21-22, 2011, [REDACTED] received three (3) wire transfers from the Republic of Mexico totaling $276,481.90 which were deposited into his account at Bank of America. On or about July 28, 2011, [REDACTED] withdrew approximately $250,000 in the form of a cashier's check payable to Southwest Stallion Station from this Bank of America account and an additional $300,000 from his Compass Bank account for the payment of the boarding and breeding of the organization's horses.

OA14. On November 5, 2011 at the Heritage Place Fall Mixed Sale in Oklahoma City, Oklahoma, Defendants FERNANDO GARCIA and CARLOS NAYEN assisted the organization in purchasing eight (8) horses for a total of approximately $211,500.  GARCIA acted as the surety for the purchase of the horses.  During the same sale, Defendant JOSE TREVINO brought four (4) horses to be sold at auction. GARCIA also acted as the surety for the purchasers of these horses.  JOSE TREVINO sold BLUES GIRL CHOICE for approximately $102,000; DEVIL RIDGE for approximately $100,000; NUMBER ONE CARTEL for approximately $280,000; and, FORTY FORCE for approximately $40,000, which prices were greater than market value, to members of his own organization in order to provide the appearance of a legitimate sale.   All payment arrangements for all horses were made by NAYEN.

OA15.  ZULEMA TREVINO and her husband, Defendant JOSE TREVINO controlled 66 LAND, LLC., and ZULE FARMS, both business entities registered in the state of Oklahoma. In or about November 2011, Defendant ZULEMA TREVINO, acting on behalf of 66 LAND, LLC., made a number of payments for the boarding and upkeep of the organization's quarter horses located in Lexington, Oklahoma

OA16.  On or about December 12, 2011, Defendant VICTOR LOPEZ made three (3) cash deposits totaling approximately $65,550 into various accounts of Defendant EUSEVIO HUITRON.

OA17. On or about January 19-21, 2012, at the Heritage Place Winter Mixed Sale held in Oklahoma City, Oklahoma, Defendant FERNANDO GARCIA assisted in the purchase of five (5) horses and two (2) foals in utero.  The horses were placed in the names of various nominees as the purchasers.  The total cost was $280,400.  ADT PETROSERVICIOS, a company owned

by Defendant FRANCISCO COLORADO CESSA, wired $228,700 on February 15, 2012, to cover part of the purchase price for these horses.

OA18. Beginning on February 28, 2012 until March 2, 2012, FERNANDO GARCIA directed eight (8) cash payments totaling $51,700, none of which were more than $10,000, to Heritage Place Auction House for the purchase of various quarter horses at the Heritage Place 2012 Mixed Sale Auction.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE

### I.
### Money Laundering Forfeiture Statutes and Violations
### [18 U.S.C. §§ 1956(h) and subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1)]

As a result of the foregoing criminal violation as set forth in Count One of the Indictment, which is punishable by imprisonment for more than one year, **MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO-MORALES (2), JOSE TREVINO-MORALES(3), ZULEMA TREVINO(4), CARLOS MIGUEL NAYEN BORBOLLA(5), FRANCISCO ANTONIO COLORADO CESSA(6), FERNANDO SOLIS GARCIA(7), VICTOR MANUEL LOPEZ(8), SERGIO ROGELIO GUERRERO RINCON(9), ADAN FARIAS(10), EUSEVIO MALDONADO HUITRON(11),** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**, FELIPE ALEJANDRO QUINTERO(13), RAUL RAMIREZ(14),   and LUIS GERARDO AGUIRRE(15)** shall forfeit any and all right, title, and interest in the below-described property to the United States, pursuant to 18 U.S.C. § 982(a)(1), which states the following:

**18 U.S.C. § 982.**

**(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, . . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes, but is not limited to the property, described below in paragraphs II, III, and IV.

### II.

### Personal Property

As a result of the foregoing criminal violations as set forth in Count One of the Indictment,

18

**DEFENDANTS MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO-MORALES(2), JOSE TREVINO-MORALES(3), ZULEMA TREVINO(4), CARLOS MIGUEL NAYEN BORBOLLA(5), FRANCISCO ANTONIO COLORADO CESSA(6), FERNANDO SOLIS GARCIA(7), VICTOR MANUEL LOPEZ(8), SERGIO ROGELIO GUERRERO RINCON(9), ADAN FARIAS(10), EUSEVIO MALDONADO HUITRON(11),** ████████████ **FELIPE ALEJANDRO QUINTERO(13), RAUL RAMIREZ(14), and LUIS GERARDO AGUIRRE(15)** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), the following:

A. Quarter Horse TEMPTING DASH, asset of MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO MORALES(2), and their nominees, JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4) operating under various names to include TREMOR ENTERPRISES, TREMOR ENTERPRISES LLC, ZULE FARMS, and 66 LAND LLC;

B. Quarter Horse MR. PILOTO, asset of MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO MORALES(2), and their nominees, JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4) operating under various names to include TREMOR ENTERPRISES, TREMOR ENTERPRISES LLC, ZULE FARMS, and 66 LAND LLC;

C. Quarter Horse DASHIN FOLLIES, asset of MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO MORALES(2), and their nominees, JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4) operating under various names to include TREMOR ENTERPRISES, TREMOR ENTERPRISES LLC, ZULE FARMS, and 66 LAND LLC;

D. Quarter Horse CORONITA CARTEL, asset of MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO MORALES(2), and their nominees, JOSE TREVINO-MORALES(3) and ZULEMA TREVINO(4) operating under various names to include TREMOR ENTERPRISES, TREMOR ENTERPRISES LLC, ZULE FARMS, and 66 LAND LLC;

E. Quarter Horse SEPARATE FIRE, asset of MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO MORALES(2), and their nominees, JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4) operating under various names to include

TREMOR ENTERPRISES, TREMOR ENTERPRISES LLC, ZULE FARMS, and 66 LAND LLC;

F.  Any and all assets to include horses, farm and ranch equipment, and horse racing equipment under the control of JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4) operating under various names to include TREMOR ENTERPRISES, TREMOR ENTERPRISES LLC, 66 LAND LLC, ZULE FARMS LLC, and their nominees;

G.  Any and all assets to include horses, farm and ranch equipment, and horse racing equipment under the control of FERNANDO SOLIS GARCIA(7), GARCIA BLOODSTOCK & RACING LLC, BONANZA RACING STABLES LLC, and their nominees;

H.  Any and all assets to include horses, farm and ranch equipment, and horse racing equipment under the control of CARLOS MIGUEL NAYEN BORBOLLA(5) and FRANCISCO ANTONIO COLORADO CESSA(6) operating under various names to include CARMINA LLC and their nominees;

I.  Any and all assets to include horses, farm and ranch equipment, and horse racing equipment under the control of ADAN FARIAS(10) operating under LA HORSES INC.;

J.  Any and all assets to include horses, farm and ranch equipment, and horse racing equipment under the control of DESIREE PRINCESS RANCH LLC and their nominees;

K.  Any and all funds in Bank of America Account Number ********1054 in the name of TREMOR ENTERPRISES LLC, under the control of JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4);

L.  Any and all funds in Bank of America Account Number ********7266 in the name of TREMOR ENTERPRISES LLC, under the control of JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4); and

M.  Any and all funds in Bank of America Account Number ********4143 in the name of 66 LAND LLC, under the control of JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4).

## III.

### Real Property

As a result of the foregoing criminal violations as set forth in Count One of the Indictment,

**DEFENDANTS JOSE TREVINO MORALES(3), ZULEMA TREVINO(4) and EUSEVIO**

**MALDONADO HUITRON(11)** shall forfeit to the United States, pursuant to and 18 U.S.C.

§ 982(a)(1), the following:

**A.  All right, title and interest of DEFENDANT JOSE TREVINO MORALES(3) and ZULEMA TREVINO(4) in the following real property are subject to forfeiture to the United States of America:**

1.  Real property located and situated at **17840 84th Street, Lexington, Cleveland County, Oklahoma,** including any and all buildings, appurtenances and improvements thereon and any and all surface rights, title and interests, if any, and more fully described as: LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS ALL THAT CERTAIN PROPERTY SITUATED IN THE COUNTY OF CLEVELAND, AND STATE OF OK AND BEING DESCRIBED IN A DEED DATED 09/20/2011 AND RECORDED 10/05/2011 IN BOOK / PAGE:4918 / 759 AMONG THE LAND RECORDS OF THE COUNTY AND STATE SET FORTH ABOVE, AND REFERENCED AS FOLLOWS:

THE FOLLOWING DESCRIBED REAL PROPERTY AND PREMISES SITUATED LN CLEVELAND COUNTY, STATE OF OKLAHOMA, TO WIT: PART OF THE SOUTHEAST QUARTER (SE/4) OF SECTION EIGHT (8), TOWNSHIP SIX (6) NORTH, RANGE ONE (1) WEST OF THE I.M., CLEVELAND COUNTY, OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING FROM THE NW CORNER OF SAID SE/4, THENCE NORTH 89 DEGREES 4956" EAST A DISTANCE OF 209.00 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 0 DEGREES 05'29" WEST A DISTANCE OF 418.00 FEET; THENCE S. 89 DEGREES 49'S6" W. A DISTANCE OF 209.00 FEET; THENCE S. 0 DEGREES 05'29" W. A DISTANCE OF 889.06 FEET; THENCE N. 89 DEGREES 52'21" E. A DISTANCE OF 2623.81 FEET TO THE EAST SECTION LINE OF SAID SECTION 8; THENCE ALONG SECTION LINE N. 0 DEGREES 0659" WEST A DISTANCE OF 1,308.89 FEET; THENCE S. 89 DEGREES 49'56" WEST A DISTANCE OF 2,410.07 FEET TO THE POINT OF BEGINNING.

THE REAL PROPERTY DESCRIBED IN THIS WARRANTY DEED INCLUDES AS AN IMPROVEMENT TO THE LAND SET FORTH HEREIN A MOBILE HOME, 1995 OAKCRE, VEH ID#) CO5957324AB, TITLE #553098176011G, #060391432A0577, PERMANENTLY AFFIXED TO SAID LAND.   RESERVATIONS FROM AND

EXCEPTIONS TO CONVEYANCE AND WARRANTY FOR ALL OF THE AFOREMENTIONED REAL PROPERTY: Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

2. Real property located and situated at **17850 84th Street, Lexington, Cleveland County, Oklahoma,** including any and all buildings, appurtenances and improvements thereon and any and all surface rights, title and interests, if any, and more fully described as: THE SOUTH HALF OF THE SOUTHEAST QUARTER (S ½ SE 1/4) OF SECTION EIGHT (8), TOWNSHIP SIX (6) NORTH, RANGE ONE (1) WEST OF THE INDIAN MERIDIAN, CLEVELAND COUNTY, OKLAHOMA, LESS AND EXCEPT A TRACT OF LAND THAT IS PART OF THE SOUTHEAST QUARTER (SE 1/4) OF SECTION EIGHT (8), TOWNSHIP SIX (6) NORTH, RANGE ONE(1) WEST OF THE I.M., CLEVELAND COUNTY, OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING FROM THE SW CORNER OF THE SE 1/4 OF SAID SECTION EIGHT; THENCE N 89 DEGREES 59' 48" E, A DISTANCE OF 654.47 FEET; THENCE N 0 DEGREES 25' 22" E, A DISTANCE OF 1326.37 FEET, THENCE S 89 DEGREES 52' 21" W, A DISTANCE OF 662.15 FEET; THENCE S 0 DEGREES 05' 29" W, A DISTANCE OF 1324.90 FEET TO THE POINT OF BEGINNING. RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY FOR ALL OF THE AFOREMENTIONED REAL PROPERTY: Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

3. Real property located and situated at **17860 84th Street, Lexington, Cleveland County, Oklahoma,** including any and all buildings, appurtenances and improvements thereon and any and all surface rights, title and interests, if any, and more fully described as: THE SOUTH HALF OF THE SOUTHEAST QUARTER (S ½ SE 1/4) OF SECTION EIGHT (8), TOWNSHIP SIX (6) NORTH, RANGE ONE (1) WEST OF THE INDIAN MERIDIAN, CLEVELAND, COUNTY, OKLAHOMA, LESS AND EXCEPT A TRACT OF LAND THAT IS PART OF THE SOUTHEAST QUARTER (SE 1/4) OF SECTION EIGHT (8), TOWNSHIP SIX (6) NORTH, RANGE ONE (1) WEST OF THE I.M., CLEVELAND COUNTY, OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING FROM THE SW/CORNER OF THE SE 1/4 OF SAID SECTION 8; THENCE N 89 DEGREES 59' 48" E A DISTANCE OF 654.47 FEET; THENCE N 0 DEGREES 25' 22" E A DISTANCE OF 1326.37 FEET, THENCE S 89

DEGREES 52' 21" W A DISTANCE OF 662.15 FEET; THENCE S 0 DEGREES 05' 29" W A DISTANCE OF 1324.90 FEET TO THE POINT OF BEGINNING. EXCLUDING MINERAL RIGHTS PREVIOUSLY RESERVED OR CONVEYED OF RECORD. RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY FOR ALL OF THE AFOREMENTIONED REAL PROPERTY: Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

**B.    All right, title and interest of DEFENDANT EUSEVIO MALDONADO HUITRON(11) in the following real property are subject to forfeiture to the United States of America:**

1. Real property located and situated at **163 Rianna Woods, Dale, Bastrop County, Texas,** including any and all buildings, appurtenances and improvements thereon and any and all surface rights, title and interests, if any, and more fully described as: A342 WARNELL, HENRY, ACRES 14.9950. RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY FOR ALL OF THE AFOREMENTIONED REAL PROPERTY: Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

## IV.

### Money Judgment

As a result of the foregoing criminal violations as set forth in Count One, **DEFENDANTS MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO-MORALES(2), JOSE TREVINO MORALES(3), ZULEMA TREVINO(4), CARLOS MIGUEL NAYEN BORBOLLA(5), FRANCISCO ANTONIO COLORADO CESSA(6), FERNANDO SOLIS GARCIA(7), VICTOR MANUEL LOPEZ(8), SERGIO ROGELIO GUERRERO RINCON(9), ADAN FARIAS(10), EUSEVIO MALDONADO HUITRON(11),** ███████████, **FELIPE ALEJANDRO QUINTERO(13), RAUL RAMIREZ(14), and**

**LUIS GERARDO AGUIRRE(15)** shall forfeit to the United States all right, title and interest, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 982(a)(1), the following described Money Judgment of Forfeiture:

> A sum of money equal to Twenty Million Dollars in United States currency ($20,000,000.00), representing the amount of money derived from or traceable to the proceeds obtained directly or indirectly from the commission of the offenses described above in Count One for which **DEFENDANTS MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO-MORALES(2), JOSE TREVINO MORALES(3), ZULEMA TREVINO(4), CARLOS MIGUEL NAYEN BORBOLLA(5), FRANCISCO ANTONIO COLORADO CESSA(6), FERNANDO SOLIS GARCIA(7), VICTOR MANUEL LOPEZ(8), SERGIO ROGELIO GUERRERO RINCON(9), ADAN FARIAS(10), EUSEVIO MALDONADO HUITRON(11),** ███████████, **FELIPE ALEJANDRO QUINTERO(13), RAUL RAMIREZ(14), and LUIS GERARDO AGUIRRE(15)** are jointly and severally liable.

**V.**

**Substitute Assets**

**[18 U.S.C. § 982(a)(2), 21 U.S.C. § 853(p), pursuant to 18 U.S.C. § 982(b)(1) and Fed. R. Crim. P. 32.2]**

If the money judgment described above as being subject to forfeiture for violation of 18 U.S.C. § 1956(h) and subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1), as a result of any act or omission of **DEFENDANTS MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR TREVINO MORALES(2), JOSE TREVINO MORALES(3), ZULEMA TREVINO(4), CARLOS MIGUEL NAYEN BORBOLLA(5), FRANCISCO ANTONIO COLORADO CESSA(6), FERNANDO SOLIS GARCIA(7), VICTOR MANUEL LOPEZ(8), SERGIO ROGELIO GUERRERO RINCON(9), ADAN FARIAS(10), EUSEVIO MALDONADO HUITRON(11),** ███████████, **FELIPE ALEJANDRO QUINTERO(13), RAUL RAMIREZ(14), and LUIS GERARDO AGUIRRE(15)**

> a.   cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;
c.  has been placed beyond the jurisdiction of the Court;
d.  has been substantially diminished in value; or
e.  has been commingled with other property which cannot be subdivided
    without difficulty;

It is the intent of the United States of America to seek forfeiture of any other property, to

include the properties listed in paragraphs II and III above, up to the value of said forfeitable

property, and money judgment described above in paragraph IV.

A TRUE BILL:

**ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002**

ROBERT PITMAN
United States Attorney

By: _____
DOUGLAS W. GARDNER
Assistant United States Attorney

25